IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 14-281 |
| | ) |
| MICHAEL GILES | ) |

## OPINION

On March 24, 2014, Michael Giles ("defendant") was charged in a two-count superseding indictment with possession of a firearm by a convicted felon on both November 29, 2013 (Count One) and March 17, 2011 (Count Two).[1]

Currently pending before the court are six pretrial motions filed on behalf of defendant: (1) a motion to produce exculpatory and impeachment evidence; (2) a motion to produce 404(b) and 609 evidence; (3) a motion for separate trials on counts one and two; (4) a motion for discovery; (5) a motion to suppress evidence; and, (6) a motion to dismiss the indictment on jurisdictional grounds. The government filed an omnibus response to the pretrial motions and defendant filed a reply and a supplement.

A hearing on defendant's motion to suppress, which relates solely to count two of the superseding indictment, was held on November 24, 2015. Both parties subsequently filed post-hearing briefs. For the reasons set forth below, defendant's discovery-related motions will be granted in part but his motion to suppress, his motion for separate trials and his motion to dismiss all will be denied.

---

[1] The original one-count indictment charged defendant only with possession of a firearm on November 29, 2013. The superseding indictment added a second possession-of-a-firearm count related to the March 17, 2011, incident.

I. **Motion to Produce Exculpatory & Impeachment Evidence (Doc. #41) & Motion for Discovery (Doc. #44)**

Defendant has filed a motion to compel production of exculpatory and impeachment material as required under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, as well as a motion for discovery under Rule 16. These motions will be granted in part and denied in part.

Generally, governmental disclosure of evidence in criminal cases is governed by Federal Rule of Criminal Procedure 16(a). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1) "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act[2] and materials available pursuant to the "Brady doctrine." Id.

In Brady, the Supreme Court held that the prosecution violates due process when it suppresses evidence favorable to the defendant that is material either to guilt or punishment. 373 U.S. at 87. Accordingly, the government has an obligation to disclose such evidence, United States v. Moreno, 727 F.3d 255, 262 (3d. Cir. 2013), and "[t]his includes both directly exculpatory evidence and impeachment evidence." United States v. Walker, 657 F.3d 160, 184-85 (3d Cir. 2011)(*citing* United States v. Bagley, 473 U.S. 667, 676 (1985)(impeachment as well as exculpatory evidence falls within Brady rule)).

---

[2] The Jencks Act provides that after a government witness testifies, and upon motion by the defendant, the government must produce "any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. §3500(b); United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001). The purpose of Jencks disclosure "is to provide the defendant with an opportunity to review the witness's statements for any possible inconsistencies that he might use to impeach the witness." United States v. Maury, 695 F.3d 227, 248 (3d Cir. 2012).

2

In response to defendant's motion, the government has acknowledged its obligations under Brady and its progeny, as well as Fed.R.Crim.P. 16, and indicates it is "willing to cooperate with any reasonable request by defendant." The government further indicates that it has no exculpatory Brady material pertaining to defendant at this time, but will continue to be mindful of its obligations to disclose such material if discovered and will do so "in time for its effective use at trial." The government also requests that it be permitted to disclose Brady impeachment material, if any, at the time it discloses Jencks material.

While the failure to timely disclose exculpatory evidence is not *ipso facto* reversible error so long as the defendant is not "prevented by lack of time to make needed investigation," United States v. Vella, 414 Fed. Appx. 400, 409 (3d Cir. 2011), exculpatory evidence nevertheless should be disclosed without undue delay. United States v. Kaplan, 554 F.2d 577, 580-81 (3d Cir. 1977)(delayed disclosure of exculpatory evidence is "not desirable and we do not encourage it"). Therefore, while the government indicates it currently is unaware of any exculpatory evidence, should any such evidence be discovered, the court will require the government to disclose it immediately upon becoming aware of it. United States v. Starusko, 729 F.2d 256, 261 (3d Cir. 1984)("[t]he district court may dictate by court order when Brady material must be disclosed").

While Brady impeachment material ordinarily need be disclosed only "in time for its effective use at trial," United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983), the Third Circuit Court of Appeals also encourages adherence to a long-standing policy of promoting early production of all types of Brady material "to ensure the effective administration of the criminal justice system." Starusko, 729 F.2d at 261 (*quoting* Higgs, 713 F.2d at 44, n. 6). Given the

3

nature of this case, the court believes that disclosure of <u>Brady</u> impeachment material no later than two weeks prior to trial will be sufficient to protect the due process rights of the defendant and to ensure that trial delay is avoided.

As the government is cognizant of its discovery obligations, and has stated its intent to fulfill those obligations if it already has not done so, defendant's <u>Brady</u> motion and motion for discovery will be granted in part and denied in part, and the following order will be entered:

1) The government shall disclose all <u>Brady</u> exculpatory material forthwith or immediately upon its discovery;

2) The government shall disclose all <u>Brady</u> impeachment material and Rule 16(a) material no later than two weeks prior to trial;

3) The government shall disclose all Jencks material in accordance with 18 U.S.C. §3500(b), but with encouragement to disclose such material no later than two weeks prior to trial;

4) To the extent defendant requests additional information not discoverable under Rule 16, <u>Brady</u> or the Jencks Act, the discovery motion is denied.

II. **Motion to Produce Evidence under FRE 404(b) & 609 (Doc. #42)**

Defendant's second motion requests an order compelling the government to provide notice of any evidence it intends to introduce at trial under Rules 404(b) and 609 of the Federal Rules of Evidence. This motion will be granted.[3]

---

[3] While granting defendant's request that the government provide notice of any evidence it intends to offer under F.R.E. 404(b) and 609, the court cannot make any ruling as to the admissibility of any such evidence at this time. <u>United States v. Giampa</u>, 904 F.Supp. 235, 284 (D.N.J. 1995). Similarly, this court is in no position to make a pretrial ruling on the admissibility of any prior convictions under Rule 609 outside the context of trial. *See, e.g.*, <u>United States v. Luce</u>, 469 U.S. 38, 41 (1984)(in order to perform balancing of probative value of a prior conviction against prejudicial effect, the court must know the precise nature of the defendant's testimony).

4

While "evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Fed.R.Evid. 404(b) provides that such evidence may be admissible[4] for another purpose, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident," *provided* that, upon request by the defendant, the government must provide reasonable notice in advance of trial, or during trial for good cause, of the general nature of any such evidence it intends to introduce at trial.

In its response, the government indicates that it is aware of its obligations under Rule 404(b) and that it will provide formal notice of its intent to use any such evidence at least 3 weeks prior to trial. While Rule 404(b) provides no specific time limit for pretrial notice, this time frame is more than sufficient to constitute reasonable notice. Other courts that have considered what constitutes "reasonable notice" have concluded that even shorter periods of time are sufficient notice under the rule. *See* United States v. Evangelista, 813 F.Supp. 294, 302 (D.N.J. 1993)(ten days); United States v. Alex, 791 F.Supp. 723, 728-29 (N.D.Ill. 1992)(seven days); United States v. Williams, 792 F.Supp. 1120, 1133 (S.D.Ind. 1992)(ten days).

Rule 609(a)(1)(B) provides that, for the purpose of attacking a testifying defendant's character for truthfulness by evidence of a criminal conviction, evidence that the defendant has been convicted of any crime punishable in the convicting jurisdiction by death or imprisonment for more than one year must be admitted if the court determines that the probative value of that

---

[4] Evidence is admissible under Rule 404(b) if: (1) it has a proper purpose under Rule 404(b); (2) it is relevant under Rules 401 and 402; (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under Rule 403; and, (4) the court charges the jury to consider it only for the limited purpose for which it is admitted. United States v. Vega, 285 F.3d 256, 261 (3d Cir. 2002)(*citing* Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

5

evidence outweighs its prejudicial effect to the defendant. The rule also provides that evidence that any witness has been convicted of any crime must be admitted, regardless of punishment, "if the court can readily determine that establishing the elements of the crime required proving - or the witness's admitting - a dishonest act or false statement." F.R.E. 609(a)(2).

The only advance notice requirement under Rule 609 is that the government must provide "reasonable advance written notice" of its intent to use the evidence if 10 years have passed since the conviction or release from confinement for it, whichever is later. Fed.R.Evid. 609(b). In its response, the government does not indicate specifically whether it may intend to introduce any evidence under Rule 609, but does state that in addition to its notice under Rule 404(b), it will inform the defendant of any evidence it intends to submit under "the additional rules," including Rule 609, at least three weeks prior to trial.

Accordingly, defendant's motion to provide notice of any evidence the government intends to introduce at trial under Fed.R.Crim.P 404(b) or 609 will be granted, and an order will be entered requiring the government to provide notice of the general nature of any such evidence no later than three weeks prior to trial. Any rulings on the admissibility of any such evidence will be reserved until the time of trial.

III. **Motion for Separate Trials (Doc. #43)**

Defendant has filed a motion for separate trials on count one and count two of the superseding indictment based on two grounds. First, he argues that the counts are improperly joined under Fed.R.Crim.P. 8(a) because they involve totally unrelated criminal acts allegedly

6

committed 2 ½ years apart – on March 17, 2011, and November 29, 2013 - and which have no evidence, witnesses, or victims in common. Alternatively, he contends that, even if the counts are properly joined, they should be severed for trial under Fed.R.Crim.P. 14(a) because a joint trial will prejudice him by creating a serious risk that the jury will be unable to reach a reliable verdict at either count based upon the cumulative impact of the evidence stemming from the two unrelated incidents.

Initially, the court is satisfied that the two counts properly have been joined under Rule 8(a). Pursuant to that rule, offenses may be joined if they "are of the same or similar character, *or* are based on the same act or transaction, *or* are connected with or constitute parts of a common scheme or plan." (emphasis added). Here, count one properly was joined with count two because they are offenses of the same or similar character, as both allege similar conduct, *i.e.*, defendant's unlawful possession of a firearm, and implicate the same criminal statute, *i.e.*, 18 U.S.C. §§922(g)(1) and 924(e). Thus, because counts one and two are similar but for the fact they allege the illegal possession of different firearms on different dates, they properly are joined under Rule 8(a). *See* United States v. Hagins, 452 Fed.Appx. 141, 146 (3d Cir. 2011)(four separate §922(g)(1) charges properly joined regardless of fact each count identified different acts of possession at different times).

Defendant nevertheless argues that counts one and two are not properly joined because they were committed 2 ½ years apart and have no evidence, victims or witnesses in common. However, his suggestion that proper joinder under Rule 8(a) requires a "transactional nexus" *in addition to* offenses "of the same or similar character" is not well-taken. Rule 8(a) clearly is written in the disjunctive such that only one of the three prongs must be met for counts to be

7

joined properly. Moreover, while Rule 8(b) requires some sort of transactional nexus for the joinder of *defendants*, Rule 8(a) is broader and explicitly authorizes joinder of counts where the charged offenses merely are of the same or similar character. "'Although the standards of Rule 8(a) and Rule 8(b) are similar ... Rule 8(a) is more permissive than Rule 8(b) because Rule 8(a) allows joinder on an additional ground, *i.e.*, when the offenses are of the same or similar character.'" United States v. Green, 563 Fed.Appx. 913, 915-16 (3d Cir. 2014)(*quoting* United States v. Irizarry, 341 F.3d 273, 287 n. 4 (3d Cir. 2003)).

Here, counts one and two charge offenses "of the same or similar character" regardless of any temporal or evidentiary dissimilarity between the two, and they properly have been joined under Rule 8(a). *See* United States v. Coleman, 22 F.3d 126, 133 (7th Cir. 1994)("if offenses are of like class, although not connected temporally or evidentially, the requisites of proper joinder should be satisfied so far as Rule 8(a) is concerned"). Accordingly, defendant's request for separate trials on the ground of improper joinder will be denied.

In the alternative, defendant requests separate trials on counts one and two on the ground of prejudicial joinder under Fed.R.Crim.P. 14(a), which provides, "[i]f the joinder of offenses ... appears to prejudice a defendant ... the court may order separate trials of counts ... or provide any other relief that justice requires."

To prevail on a severance claim based on prejudicial joinder, a defendant must "pinpoint clear and substantial prejudice resulting in an unfair trial." United States v. McGlory, 968 F.2d 309, 340 (3d Cir. 1992). This requires more than a showing that "severance [will increase] the defendant's chances of acquittal." McGlory, 968 F.2d at 340. Rather, "the question of prejudice hinges upon 'whether the jury will be able to

8

compartmentalize the evidence ... in view of its volume and limited admissibility.' " United States v. Walker, 657 F.3d 160, 170 (*quoting* United States v. Davis, 397 F.3d 173, 182 (3d Cir.2005)).

Here, defendant baldly speculates that he will be prejudiced by the joinder for trial of the offense charged at count one with the offense charged at count two due to the cumulative impact of the evidence as to the unrelated incidents. Even assuming that is true, however, "the potential for the type of prejudice ... of which [defendant] complains is the same potential for prejudice that every criminal defendant faces when multiple counts are tried together," United States v. Williams, 504 Fed.Appx. 207, 212-13 (3d Cir. 2012), and this argument does no more than suggest that severance may increase his chances of acquittal, which is not sufficient to meet the prejudice standard under Rule 14(a). United States v. Green, 563 Fed. Appx. at 918.

Moreover, petitioner has advanced nothing beyond mere conjecture to suggest that the jury will be unable to compartmentalize the evidence as to each count. Here, the evidence as to each count will be quite discrete, as the incident underlying count one occurred on a separate date than the incident underlying count two, and the jury explicitly will be instructed that they are to consider each count separately and return a separate verdict of guilty or not guilty at each count.

Recognizing a preference for joint trials, severance under Rule 14 is to be granted "only if there is a serious risk that a joint trial will compromise a specific trial right ... or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 538-39 (1993). Because any danger that the jury might confuse the different counts

AO 72
(Rev. 8/82)

easily can be prevented with a proper limiting instruction that the jury is to give separate consideration to each separate charge, see Zafiro, 506 U.S. at 539 (limiting instructions often suffice to cure any risk of prejudice), defendant's request for separate trials on the ground of prejudicial joinder under Fed.R.Crim.P. 14(a) will be denied.

IV. **Motion to Suppress** (Doc. #45)

Defendant's motion to suppress seeks the suppression of physical evidence[5] obtained from his arrest on March 17, 2011,[6] when he was walking a block from his home in the Mexican War Streets section of Pittsburgh. Defendant alleges that his warrantless arrest on that date lacked probable cause and does not fall within any exception to the warrant requirement.

The court heard testimony and received evidence at a suppression hearing held on November 24, 2015. Subsequently, the parties submitted post-hearing briefs. Upon due consideration of the testimony and evidence adduced at the hearing, as well as the arguments raised in the parties' papers, defendant's motion to suppress will be denied for the reasons set forth below.

---

[5] Although defendant's motion also seeks the suppression of any statements derived from his arrest on March 17, 2011, the government has indicated that it does not intend to offer evidence of any statements of defendant relating to the incident charged at count two.

[6] Defendant's motion to suppress relates to count two of the superseding indictment only. He has made no motion to suppress with regard to the November 29, 2013, incident charged at count One.

10

## Evidentiary Hearing

At the evidentiary hearing, the government presented the testimony of Sergeant Matthew Turko of the Pittsburgh Bureau of Police. Sergeant Turko was a detective in the narcotics and vice unit in March of 2011 and was involved in defendant's arrest on March 17 of that year.

Sergeant Turko testified that his duties while working in the narcotics and vice unit included enforcement of narcotics, guns and motor vehicle code laws. He generally was in plain clothes and in an unmarked vehicle, and he participated in hundreds of stops and/or arrests while serving in that unit.

Sergeant Turko further testified that he was involved in the arrest of defendant on March 17, 2011. On that day, he, Detective Robert Smith and Detective Jud Pollock were in plain clothes in an unmarked car traveling on Jacksonia Street when they first observed defendant walking. They noted his left arm was swinging freely and normally but his right arm was pinned to his side. They further observed defendant take a stutter-step and clutch the right side of his waist after noticing their vehicle.

Based on his experience, Sergeant Turko believed that defendant's actions in keeping one arm pinned to his side and checking his waist, along with the fact that it was a high-crime neighborhood, suggested defendant might be carrying a firearm. Sergeant Turko testified that as their vehicle approached defendant, Detective Smith said "Pittsburgh police" and asked defendant to stop. Defendant stopped and said something to the officers, but then continued to walk. When the officers started to exit the vehicle, defendant took off running. Sergeant Turko indicated that after defendant fled he was instructed multiple times to stop but he did not.

AO 72
(Rev. 8/82)

Sergeant Turko was shown a map of the Mexican War Streets neighborhood of Pennsylvania. Government Exhibit #1. He indicated they first encountered defendant near the intersection of Sherman and Jacksonia streets and that defendant took off running and eventually made a right from Jacksonia onto Saturn Way, then made a left through backyards shared by Jacksonia and Alpine, before eventually being apprehended on Alpine Avenue.

Sergeant Turko testified that he and Detective Smith pursued defendant on foot while Detective Pollock continued to drive the vehicle. Sergeant Turko testified that he observed defendant running next to a series of fences that divided the yards and saw him pull a black pistol from his right waistband area and "dunk" it over a six-foot high wooden fence, and then he continued to run. Sergeant Turko identified the area where the firearm was discarded as between Saturn Way and Garfield and behind Jacksonia and Alpine.

Sergeant Turko testified that he continued to chase defendant for a short time before realizing Detective Smith and Detective Pollock were going to be able to stop defendant. He then went back, climbed the six-foot fence and hopped over to retrieve the firearm, which was sticking nose down in the ground.

Discussion

Based on the testimony adduced at the hearing the court finds no grounds to suppress any evidence in this case.

As an initial matter, as the government aptly notes, the firearm was not the fruit of a seizure within the meaning of the Fourth Amendment. The Fourth Amendment protects the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. The

AO 72
(Rev. 8/82)

Supreme Court has held that a seizure occurs when the police apply physical force to restrain a person or, absent force, the person seized submits to police authority. California v. Hodari D., 499 U.S. 621, 626-28 (1991); *see also* United States v. Mendenhall, 446 U.S. 544, 553 (1980) (stating that "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained").[7] Thus, if the police assert their authority and a suspect does not submit, there is no seizure. Hodari D., 499 U.S. at 626; *see also* United States v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000). A submission to authority occurs when a suspect "manifests compliance with police orders." United States v. Waterman, 569 F.3d 144, 146, n.3 (3d Cir. 2009).

In this case, the officers identified themselves as the police and asked defendant to stop. Rather than submitting to police authority, defendant fled and, in the course of his flight, he discarded the firearm. Because defendant did not comply with police orders, no seizure occurred until he was apprehended, and the recovery of the firearm he discarded during his flight was not the product of his subsequent seizure. *See* Hodari D., 499 U.S. at 629 (defendant who failed to comply with instruction to halt was not seized until he was tackled and therefore drugs he abandoned while he was in flight were not fruit of seizure). Accordingly, the Fourth Amendment is not implicated here.

---

[7] The Supreme Court explained in Mendenhall that "[t]he purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" Mendenhall, 446 U.S. at 553-54 (*quoting* United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). The Court further explained that to characterize every street encounter between the police and an individual citizen as a seizure while not enhancing any Fourth Amendment interest "would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices." Mendenhall, 446 U.S. at 554.

AO 72
(Rev. 8/82)

Furthermore, defendant has no standing to mount a Fourth Amendment challenge to the recovery of the firearm in this case because he abandoned it. An individual does not have a reasonable expectation of privacy in abandoned property, *see* United States v. Fulani, 368 F.3d 351, 354 (3d Cir. 2004)(*citing* Abel v. United States, 362 U.S. 217, 241 (1960)), and property that has been voluntarily abandoned during police pursuit prior to a seizure may be lawfully recovered. *See* United States v. Johnson, 432 Fed. Appx. 118, 121 (3d Cir. 2011)(handgun that defendant discarded during foot pursuit was abandoned).

In this case, while fleeing from the police, defendant discarded the firearm by dunking it over a wooden fence, thereby abandoning any property interest he had in it, and he makes no contention that he had any reasonable expectation of privacy in the yard from which the firearm was recovered. *See* Minnesota v. Olsen, 495 U.S. 91, 95-97 (1960)(defendant has burden to establish reasonable expectation of privacy in property searched and item seized). Accordingly, defendant has no standing to challenge the recovery of the abandoned firearm.

Finally, in any event, defendant's warrantless arrest in this case did not violate the Fourth Amendment. In order for a warrantless arrest to be lawful, it must be based on probable cause. United States v. Watson, 423 U.S. 411, 417-24 (1976)(holding that probable cause for a warrantless arrest exists when the officer has reasonable grounds to believe that an offense has been or is being committed).

Initially, the police acted lawfully in approaching defendant and asking him to stop. In Terry v. Ohio, 392 U.S. 1, 30 (1968), the United States Supreme Court held that a stop based on less than probable cause is constitutionally permissible "where a police officer observes unusual conduct which leads him to conclude in light of his experience that criminal activity may be

14

afoot." Here, the officers observed defendant in a high crime neighborhood walking with an unnatural gait as described by Sergeant Turko, which from his experience was consistent with an individual carrying a firearm, providing reasonable suspicion to justify a Terry-stop.

In turn, defendant's subsequent flight from the officers, coupled with his discarding of the firearm, provided the officers with ample probable cause for a warrantless arrest. *See* United States v. Laville, 480 F.3d 187, 195 (3d Cir. 2007)(unprovoked flight can elevate reasonable suspicion to probable cause if police have reasonably trustworthy information to believe that individual is engaged in criminal activity); Johnson, 432 Fed. Appx. at 121 (individual's flight from police and discarding firearm during flight provided police with probable cause to arrest without warrant).

Accordingly, defendant's motion to suppress evidence will be denied.

V. **Motion to Dismiss Indictment on Jurisdictional Grounds (Doc. #46)**

Defendant also has filed a motion to dismiss the indictment on jurisdictional grounds, arguing that §922(g)(1) is unconstitutional, both on its face and as applied to him, under the Commerce Clause of the United States Constitution. Specifically, he argues that the government's anticipated evidence, *i.e.*, that the two firearms charged in the superseding indictment both were manufactured outside of Pennsylvania and subsequently were present in Pennsylvania, is insufficient as a matter of law to prove that his possession of those firearms was "in or affecting interstate commerce," an essential element of a §922(g)(1) violation. *See* Jones v. United States, 529 U.S. 848 (2000); United States v. Morrison, 529 U.S. 598 (2000); United States v. Lopez, 514 U.S. 549 (1995).

15

However, as defendant recognizes in his motion, the Third Circuit Court of Appeals has ruled that §922(g)(1) is constitutional as a valid exercise of the Commerce Clause, both post-Lopez, see United States v. Gateward, 84 F.3d 670, 672 (3d Cir. 1996), and post-Jones and Morrison, see United States v. Singletary, 268 F.3d 196, 204-05 (3d Cir. 2001), and further *explicitly* has held that proof that a defendant possessed a firearm in a state other than the state in which it was manufactured *is* sufficient to establish the interstate nexus element of a §922(g)(1) violation. United States v. Shambry, 392 F.3d 631, 634-35 (3d Cir. 2004).

Defendant acknowledges that Singletary and Shambry are the law in this circuit and that he merely is raising the issue to preserve his jurisdictional claims should Scarborough v. United States, 431 U.S. 563 (1977), the holding underpinning the Singletary and Shambry cases, be overruled by the United States Supreme Court. As defendant has conceded that his position is contrary to the current law of this circuit, and there being no matter presently before the United States Supreme Court on this subject which would justify holding defendant's motion in abeyance, defendant's motion to dismiss the indictment on jurisdictional grounds will be denied. *See* United States v. Benjamin, 711 F.3d 371, 381 (3d Cir. 2013)(summarily rejecting argument that §922(g)(1) is unconstitutional where defendant recognized his arguments are foreclosed by Singletary).

An appropriate order will follow.

Date: January 4, 2016

Gustave Diamond
United States District Judge

AO 72
(Rev. 8/82)

cc: Cindy K. Chung
Assistant U.S. Attorney

Jay J. Finkelstein
Assistant Federal Public Defender

AO 72
(Rev. 8/82)